IN RE the MARRIAGE OF: Birdie Mae
SPENCER, Petitioner-Appellant,

v.

Duane M. SPENCER,† Respondent.

Court of Appeals

*No. 86–1334. Submitted on briefs February 2, 1987.—Decided
June 16, 1987.*

(Also reported in 410 N.W.2d 629.)

† Petition to review denied.

For petitioner-appellant, there was a brief by *Guy T. Ludvigson* of *Maki & Ludvigson, S.C.,* Osceola.

For respondent, there was a brief by *Stephen J. Dunlap* of *Gherty and Dunlap,* Hudson.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Birdie Mae Spencer appeals an order terminating stipulated maintenance provided for in her judgment of divorce from Duane Spencer. Birdie Mae claims that the circuit court erred by refusing to hear evidence of the intent of the parties concerning maintenance payments if she remarried. Because we conclude that the judgment is ambiguous, we reverse and remand for further proceedings.

Birdie Mae and Duane were divorced after thirty years of marriage during which they accumulated substantial property, including commercial real estate and profitable businesses. At trial, the parties stipulated to disposition of the marital assets. The stipulation divided the marital property without valuing it. Duane's offered evidence would have shown that he received approximately $400,000 of a $600,000 estate, while Birdie Mae's evidence would have shown that Duane received approximately $600,000 of an

$800,000 estate. It appears then that Duane received between two-thirds and three-fourths of the property.

The stipulation also provided that Duane would make monthly "spousal maintenance" payments of $1,700 for thirteen years but was silent as to whether remarriage would affect the payments. If the payments were made in full, they would total $265,000. The court concluded that "the foregoing shall be deemed to constitute a full, final and complete property settlement between said parties *in lieu of any provisions for alimony ....*" (Emphasis supplied.) The stipulation was read into the record, and it was incorporated into the final judgment in August, 1981.

Duane discontinued the monthly payments after Birdie Mae remarried in 1985. Birdie Mae then filed a motion for remedial contempt to force Duane to continue the payments. Thereafter, Duane filed a motion to terminate maintenance pursuant to sec. 767.32(3), Stats., which states:

> After a final judgment requiring maintenance payments has been rendered and the payee has remarried, the court shall, on application of the payer with notice to the payee and upon proof of remarriage, vacate the order requiring such payments.

A different judge was assigned to hear the motions. At the hearing on Duane's motion, the circuit court refused to hear evidence on the intent of the parties and determined that the judgment was unambiguous. The court therefore terminated Duane's obligation. From this decision, Birdie Mae appeals.

Two obstacles stand between Birdie Mae and her goal of continued maintenance: First, the circuit court's legal conclusion that the judgment was not

ambiguous and, second, a factual determination that the parties intended sec. 767.32, Stats., to apply to them.

As to the first issue, whether an ambiguity exists is a question of law. *See Patti v. Western Mach. Co.,* 72 Wis. 2d 348, 353, 241 N.W.2d 158, 161 (1976). An appellate court must decide questions of law independently without deference to the trial court's decision. *Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984). A document is ambiguous when its words and phrases are reasonably susceptible to more than one construction. *Foursquare Props. Joint Venture I v. Johnny's Loaf & Stein Ltd.,* 116 Wis. 2d 679, 681, 343 N.W.2d 126, 127 (1983). We apply the rules of contract construction to a judgment. *See Miller v. Miller,* 67 Wis. 2d 435, 441, 227 N.W.2d 626, 629 (1975).

As to the second issue, after a contract has been found to be ambiguous, courts may look beyond its face and consider extrinsic evidence. *Capital Invests., Inc. v. Whitehall Packing Co.,* 91 Wis. 2d 178, 190, 280 N.W.2d 254, 259 (1979). Where the evidence permits more than one reasonable inference concerning the parties' intent, the trial court, not the appellate court, must make the factual determination and resolve the ambiguity. *Pfeifer v. World Serv. Life Ins. Co.,* 121 Wis. 2d 567, 571, 360 N.W.2d 65, 67 (Ct. App. 1984). In construing an ambiguous contract, the object is to ascertain and effectuate the parties' intent. *See Stradinger v. City of Whitewater,* 89 Wis. 2d 19, 30, 277 N.W.2d 827, 831 (1979). Intent may be gathered from surrounding circumstances as well as from words. *In re Grossman's Estate,* 250 Wis. 457, 461, 27 N.W.2d

365, 367 (1947). The mere fact that the statute permits termination of maintenance upon remarriage does not prevent the parties from stipulating differently. *Rintelman v. Rintelman,* 118 Wis. 2d 587, 592, 348 N.W.2d 498, 501 (1984).

We conclude that the stipulation as incorporated in the judgment is ambiguous. The findings, conclusions, and judgment refer to spousal maintenance but also speak of a property settlement in lieu of alimony. These provisions are inconsistent and therefore susceptible to more than one construction: The parties may have intended the monthly payments to equalize the property division but called it maintenance only for tax purposes, or the parties may have intended that sec. 767.32(3) applies and that maintenance terminates upon remarriage, even though the result would be unequal division of the marital estate.

There is, of course, a distinct third possibility: The parties may have entirely failed to foresee the remarriage or thought it unlikely or unimportant. If, on remand, it is necessary for the court to supply an omitted term of the stipulation, the trial court is directed to apply the principle adopted in Restatement (Second) of Contracts sec. 204:[1]

---

[1]The official comment to sec. 204 provides:

   *a. Scope; relation to other rules.* This Section states a principle governing the legal effect of a binding agreement. The supplying of an omitted term is not technically interpretation, but the two are closely related; courts often speak of an "implied" term. In many common situations the principle has been elaborated in more detailed rules, applicable unless otherwise agreed. See the rules on the effect of failure of performance stated in secs. 231–49 and the rules on impossibility and frustration stated in Chapter 11, and compare secs. 158 and 272, regarding the supplying of terms in cases of mistake and impracticability or

## Supplying an Omitted Essential Term

**When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court.**

frustration. A similar principle is often applicable in determining whether the terms of an agreement are sufficiently certain to constitute a contract. See secs. 33, 34. In both situations the supplying of an omitted term may resemble or overlap interpretation (see sec. 200) or the effect given to usage (see secs. 219–23).

*b. How omission occurs.* The parties to an agreement may entirely fail to foresee the situation which later arises and gives rise to a dispute; they then have no expectations with respect to that situation, and a search for their meaning with respect to it is fruitless. Or they may have expectations but fail to manifest them, either because the expectation rests on an assumption which is unconscious or only partly conscious, or because the situation seems to be unimportant or unlikely, or because discussion of it might be unpleasant or might produce delay or impasse.

*c. Interpretation and omission.* Interpretation may be necessary to determine that the parties have not agreed with respect to a particular term, but the supplying of an omitted term is not within the definition of interpretation in sec. 200. Where there is tacit agreement or a common tacit assumption or where a term can be supplied by logical deduction from agreed terms and the circumstances, interpretation may be enough. But interpretation may result in the conclusion that there was in fact no agreement on a particular point, and that conclusion should be accepted even though the omitted term could be supplied by giving agreed language a meaning different from the meaning or meanings given it by the parties.

*d. Supplying a term.* The process of supplying an omitted term has sometimes been disguised as a literal or a purposive reading of contract language directed to a situation other than the situation that arises. Sometimes it is said that the search is for the term the parties would have agreed to if the question had been brought to their attention. Both the meaning of the words used and the probability that a particular term would have been used if the question had been raised may be factors in determining what term is reasonable in the circumstances. But where there is in

One of the circumstances that supports Birdie Mae's position is the legislative presumption that an equal property division is the norm. Section 767.255, Stats. The parties seem to have attempted that here. The parties agreed on the record that

> the Findings when completed, include the following provisions. ... "The Court specifically finds that the distribution of property affected by the parties is an equitable distribution of the co-owned marital assets."

Unless the $1,700 payments were to continue unabated, there is no explanation for calling the division of assets equitable.

---

fact no agreement, the court should supply a term which comports with community standards of fairness and policy rather than analyze a hypothetical model of the bargaining process. Thus where a contract calls for a single performance such as the rendering of a service or the delivery of goods, the parties are most unlikely to agree explicitly that performance will be rendered within a "reasonable time;" but if no time is specified, a term calling for performance within a reasonable time is supplied. See Uniform Commercial Code secs. 1–204, 2–309(1). Similarly, where there is a contract for the sale of goods but nothing is said as to price the price is a reasonable price at the time for delivery. See Uniform Commercial Code sec. 2–305.

   *e. Effect of the parol evidence rule.* The fact that an essential term is omitted may indicate that the agreement is not integrated or that there is partial rather than complete integration. In such cases the omitted term may be supplied by prior negotiations or a prior agreement. See sec. 216. But omission of a term does not show conclusively that integration was not complete and a completely integrated agreement, if binding, discharges prior agreements within its scope. See sec. 213. Where there is complete integration and interpretation of the writing discloses a failure to agree on an essential term, evidence of prior negotiations or agreements is not admissible to supply the omitted term, but such evidence may be admissible, if relevant, on the question of what is reasonable in the circumstances.

In fact, the trial court also referred to the equitable property division. The court stated:

> The method of property settlement in conformity with the separate maintenance is in my view an excellent innovative method and that is fair to both sides. It is very simple for the Court to hear testimony in these kinds of cases and simply get out the calculator and add up the facts and figure out what the net is and see who gets one half and the other one gets the other half. It is equally important to the parties as to how that division is to be made, not simply cut it in half. That is where the expertise of the counseling comes in, which provides for both sides. In this case Mrs. Spencer is protected adequately and is provided for and Mr. Spencer can keep his business alive and well. The Court is satisfied and finds that this equitable division of the estate of the parties is fair to both sides.

We remand to allow the parties to present evidence of their intent and, if necessary, to allow the trial court to supply the essential term that is reasonable under the circumstances as shown by the evidence.

*By the Court.*—Order reversed and cause remanded with directions.