**UNITED STATES FIRE INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**PRESSED STEEL TANK CO., INC., and AMCA International Corporation, Defendants–Appellees.**

No. 87–2299.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1988.

Decided July 20, 1988.

Edmund W. Powell, Borgelt, Powell, Peterson & Frauen, S.C., Milwaukee, Wis., for plaintiff-appellant.

Andrew O. Riteris, Michael, Best & Friedrich, Milwaukee, Wis., for defendants-appellees.

Before WOOD, Jr., FLAUM, and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This case involves an insurance company's liability under an excess insurance policy. The insurance company, plaintiff-appellant United States Fire Insurance Co. (U.S. Fire) filed suit in district court seeking a declaration that it had not received proper notice of the insured's claim (referred to as the Meza claim) and that it therefore was not liable under the policy. The insured, defendants-appellees Pressed Steel Tank Co. and its parent, AMCA International Corporation (AMCA/Pressed Steel),[1] argued that they had complied with the notice provision of the excess insurance policy by providing a copy of the summons and complaint they received to U.S. Fire's authorized agent, the Kemper Agency (Kemper). The agent, however, never forwarded these documents to U.S. Fire. A jury found that AMCA/Pressed Steel had not violated the notice provision of the contract by failing to provide adequate notice to U.S. Fire of their claim, and the court entered judgment ordering U.S. Fire to provide coverage under its excess insurance policy. After plaintiff's post-trial motions were denied, it filed this appeal.

## I. FACTUAL BACKGROUND

The defendants' primary insurance was provided by Admiral Insurance Co. with an aggregate limit of $500,000. Both the Admiral primary policy and the U.S. Fire excess policy were purchased by Richard Crum, corporate risk manager for the defendants' predecessor, Giddings & Lewis, through Kemper. Crum continued as corporate risk manager for AMCA/Pressed Steel after it acquired Giddings & Lewis. His duties included evaluating liability and damage exposures and reporting claims to insurers, including excess insurers. Until he left AMCA/Pressed Steel in October of 1984, Crum was responsible for the supervision and handling of the Meza claim.

Kim Kodousek, division counsel on AMCA/Pressed Steel's legal staff, took over supervision of the Meza claim after Crum's departure. Kodousek's duties included handling product liability litigation and reporting claims to excess insurers.

The original Meza summons and complaint were received by AMCA/Pressed Steel on September 12, 1983.[2] In accordance with Texas Rule of Civil Procedure 47, no allegation of a specific dollar amount of damages appeared in the complaint, which instead sought damages "greatly in excess of the minimum jurisdictional amount of this court." This minimum was $1,000.

---

1. U.S. Fire issued the policy to Giddings & Lewis, Inc., insuring it and its subsidiaries for liability in excess of $500,000 primary coverage up to a limit of $25,000,000. Pressed Steel Tank, then a subsidiary of Giddings & Lewis, acquired the stock of Lee Cylinders, Inc., in February of 1980. Lee Cylinders manufactured the product involved in the occurrence, a propane cylinder, in December of 1979. The accident occurred September 11, 1981, in McAllen, Texas. Lee Cylinders was merged into Pressed Steel in October of 1981. In September of 1982 AMCA International acquired Giddings & Lewis, which was merged into AMCA in March of 1983. Pressed Steel was thereafter a subsidiary of AMCA, but has, at some time since March, 1983, been sold.

2. The original Meza complaint alleged that the plaintiff, Miguel Meza, Jr., "was working as an employee of Seachrist–Hall Co. near McAllen, Texas, when gas leaked from a propane tank and was ignited creating a fire which severely and permanently burned Miguel Meza, Jr." The complaint alleged that the tank in question was manufactured and sold by Lee Cylinders (now known as Pressed Steel), in a defective and unreasonably dangerous condition, and these conditions caused the plaintiff's injuries.

Crum reported the suit directly to Admiral by telephone and by letter dated September 16, 1983, to Kevin Hannon of Jersey International Group, a company that handled claims on behalf of Admiral. Crum sent copies of the September 16 letter and the summons and complaint to Mary Ann Sisulak of Kemper.[3]

After September 16, 1983, there was no further communication pertaining to the Meza claim between AMCA/Pressed Steel and Kemper until late May of 1985. The Meza case had been set for trial in Brownsville, Texas, on May 28, with an alternate date of June 10, 1985. On May 21, 1985, Kodousek, after learning that Meza's attorneys had presented to another party in the Meza case a settlement offer that exceeded Admiral's coverage, called June Gray of Kemper and asked her to notify U.S. Fire of the claim. Kodousek followed up with a confirming letter dated May 23, 1985.

Gray telephoned U.S. Fire and told a representative about the Meza complaint, adding that the trial was scheduled to begin May 28 or June 10. At the request of U.S. Fire, Gray sent Kodousek's letter and the complaint to U.S. Fire's office. U.S. Fire did not receive this correspondence until Friday, June 7, 1985. Trial began June 10.

U.S. Fire did not send a representative to attend the Meza trial. Meza's attorneys offered to settle the case during trial for $750,000. The offer was not accepted. On June 18, 1985, the jury returned a verdict finding AMCA/Pressed Steel liable for damages of $7,300,000.

On September 10, 1985, U.S. Fire sued AMCA/Pressed Steel seeking a declaration of no coverage under the theory that it had received no notice of the occurrence until the May 21, 1985, telephone call and May 23, 1985, letter to Kemper. AMCA/Pressed Steel moved for summary judgment arguing that the notice provision of the contract was satisfied when Crum sent Kemper a copy of his September 16, 1983, letter to Admiral with copies of the Meza summons and complaint. Because

Kemper was U.S. Fire's authorized agent, AMCA/Pressed Steel contended, notice to Kemper was notice to U.S. Fire, regardless of the fact that Kemper failed to provide actual notice of the occurrence to U.S. Fire. The district court denied summary judgment and the case proceeded to trial June 1, 1987.

The parties stipulated that Wisconsin law applied to both the Admiral and U.S. Fire policies.

The court submitted to the jury a two-question special verdict. The first question asked, "Did the defendants violate the insurance contract with the United States Fire Insurance Company by failing to give notice of the Meza claim to United States Fire Insurance Company in September 1983?" The second question asked the jury, "If you answered Question No. 1 'Yes' then answer the following question: Was defendants' failure to give notice of the Meza claim in September 1983 insufficient to cause prejudice to United States Fire Insurance Company?" On June 9, 1987, the jury returned its verdict, answering the first question "No."

## II. ISSUES

The plaintiff challenges the special verdict form and the court's jury instructions, arguing as follows. (1) The trial court erred in limiting the jury's consideration to the question of plaintiff's notice of the Meza claim in September, 1983, and by failing to submit a special verdict question dealing with defendants' failure to notify plaintiff of the claim at a date subsequent to September 1983. (2) The trial court erred in submitting to the jury instructions that (a) failed to allow the jury to consider evidence of the defendants' "pattern, intent and conclusion" regarding the September, 1983, communication to Kemper, (b) failed to expressly identify claims as "claims reasonably likely to involve the excess insurance company" when instructing the jury that the purpose of the notice provision is "to insure that the company or its agent

---

**3.** The Kemper Agency was taken over by Rollins, Burdick & Hunter in November of 1983. For purposes of this opinion, however, we will continue to refer to it as Kemper.

receive timely notice of a claim made against the insured," and (c) removed from the jury's consideration evidence as to information the defendants received in December, 1983, August, 1984, and March, 1985.

## III. DISCUSSION

### A. Standard of Review

■ With respect to the court's formulation of the special verdict questions, our inquiry on review is limited to whether the district court abused its discretion. *Hibma v. Odegaard,* 769 F.2d 1147, 1157 (7th Cir. 1985); Fed.R.Civ.P. 49(a). Generally, special verdict questions must accurately present the issues in the case so as not to confuse or mislead the jury. *Hibma,* 769 F.2d at 1157; *Worsham v. A.H. Robins Co.,* 734 F.2d 676, 690 (11th Cir.1984).

■ In reviewing the trial court's instructions to the jury, we will accord some deference to its interpretation of Wisconsin law. *Phelps v. Sherwood Medical Indus.,* 836 F.2d 296, 300 (7th Cir.1987); *Rush Presbyterian St. Luke's Medical Center v. Safeco Ins. Co.,* 825 F.2d 1204, 1206–07 (7th Cir.1987). The court's judgment in giving instructions will not amount to reversible error unless "the jury's understanding of the issues was seriously affected" to the prejudice of the nonprevailing party. *Phelps,* 836 F.2d at 300; *see also General Leaseways v. National Truck Leasing Ass'n,* 830 F.2d 716, 725 (7th Cir. 1987); Fed.R.Civ.P. 61. The instructions will be viewed as a whole to determine whether the jury received "the correct message." *Wilk v. American Medical Ass'n,* 719 F.2d 207, 218 (7th Cir.1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984).

### B. Jury Instructions

■ We believe that in this case, the court's instructions seriously affected the jury's understanding of the issues, and that the misunderstanding was prejudicial to the plaintiff's case.

The trial court instructed the jury that if it found the language of the insurance contract to be ambiguous, it was to construe ambiguities in the contract against the drafter, U.S. Fire, but if it found the contract to be unambiguous, the jury was to look only to the policy language in the contract itself. This instruction improperly left the determination of ambiguity to the jury. Wisconsin law is clear that ambiguity is a question of law for the court to decide. *Kremers–Urban Co. v. American Employers Ins. Co.,* 119 Wis.2d 722, 351 N.W.2d 156, 163 (1984); *Capital Invs. v. Whitehall Packing Co.,* 91 Wis.2d 178, 280 N.W.2d 254, 259 (1979). Only if the court finds the policy to be ambiguous should the jury determine the construction of the words or terms by extrinsic evidence. *Kraemer Bros., Inc. v. U.S. Fire Ins. Co.,* 89 Wis.2d 555, 278 N.W.2d 857, 860 (1979).

The court also instructed the jury that the plain meaning of the policy language is controlling even if the parties "may have placed a different construction on it." This instruction, while true of a contract that is unambiguous, *see, e.g., Dykstra v. Arthur G. McKee & Co.,* 92 Wis.2d 17, 284 N.W.2d 692, 702–03 (Ct.App.1979), *aff'd,* 100 Wis.2d 120, 301 N.W.2d 201 (1981); *Hortman v. Otis Erecting Co.,* 108 Wis.2d 456, 322 N.W.2d 482, 484–85 (Ct.App.1982), is not a correct direction regarding a jury's duty in interpreting an ambiguous contract. If the contract is unambiguous, the court is to construe it as a matter of law. *Bartel v. Carey,* 127 Wis.2d 310, 379 N.W.2d 864, 866 (Ct.App.1985), *review denied,* 127 Wis.2d 570, 383 N.W.2d 63 (1986); *Hortman,* 322 N.W.2d at 484. If the court finds the contract to be ambiguous, the fact-finder may consider parol evidence, such as the practical construction of the parties, if not inconsistent with the language of the agreement. *Wisconsin Real Estate Inv. Trust v. Weinstein,* 509 F.Supp. 1289, 1295 (E.D.Wis.1981); *Spencer v. Spencer,* 140 Wis.2d 447, 410 N.W.2d 629, 631 (Ct.App.1987).

If the contract was unambiguous, the jury should not have been given the task of interpreting it. If the contract was ambiguous, the court should have so decided, and allowed the jury to consider extrinsic evi-

dence in construing the contract's provisions. We believe this error cannot be considered harmless under Federal Rule of Civil Procedure 61.

The plaintiff presented evidence of Crum's practice in reporting claims to Kemper during the period 1979–1983, when AMCA/Pressed Steel had excess policies with U.S. Fire. Crum reported claims to Kemper by letter, specifying the insurer or insurers he wanted Kemper to notify, and asked Kemper to advise him in writing that the claims had been reported to those insurers. When Crum wanted a claim reported to the excess insurer, he always requested Kemper to do so. He would note the matter in a diary and if, after a period of time, he was not advised that the excess insurer had been notified, he would follow up to make sure that Kemper notified the excess insurer. At some point prior to September, 1983, Crum told Sisulak at Kemper that Crum would always indicate in his letters regarding claims what he wanted Kemper to do, and he would specify what insurers to notify.

Kemper followed Crum's instructions, notifying only those insurers that Crum specified in his letters. Kemper always advised Crum in writing when they had reported a claim to the excess insurer Crum requested. Crum continued to follow this pattern with the agency that took over Kemper, Rollins, Burdick & Hunter.

The essential question in this case was whether U.S. Fire had received adequate notice of the claim under its policy that would render it liable for AMCA/Pressed Steel's excess insurance needs. The operative language in the policy that dealt with notice appeared in Condition D, which provided as follows:

> D. Notice of Occurrence. Upon the happening of an occurrence reasonably likely to involve the company hereunder, written notice shall be given as soon as practicable to the company or any of its authorized agents. Such notice shall contain particulars sufficient to identify the insured and the fullest information obtainable at the time.

The insured shall give like notice of any claim made on account of such occurrence. If legal proceedings are begun the insured, when requested by the company, shall forward to it each paper thereon, or a copy thereof, received by the insured or the insured's representatives, together with copies of reports of investigations made by the insured with respect to such claim proceedings.

The plaintiff's evidence of Crum's course of performance under the contract demonstrated how Crum (and AMCA/Pressed Steel) interpreted the notice requirement of Condition D. Crum did not consider it sufficient to simply drop a note to Kemper. When he notified Kemper of "an occurrence reasonably likely to involve" the excess insurer, he would specifically instruct Kemper to provide notice to the insurer, and to advise him in writing when the notice had been provided. If the jury was to determine the meaning of the contract, it should have been allowed to consider this evidence of the insured's course of performance to ascertain the intent of the parties. *Spencer v. Spencer*, 140 Wis.2d 447, 410 N.W.2d 629, 630–31 (Ct.App.1987).

We believe that by allowing the jury to determine whether the contract was ambiguous and denying it the opportunity to consider extrinsic evidence such as course of performance if it did find the contract ambiguous, the court committed reversible error. We are unable, however, to simply reverse the district court's judgment. Because there is substantial confusion as to what the jury actually decided with its special verdict, we must remand the case to the district court.

## C. Special Verdict Form

The jury answered "No" to the question, "Did the defendants violate the insurance contract with the United States Fire Insurance Company by failing to give notice of the Meza claim to United States Fire Insurance Company in September 1983?" Because it answered this question in the negative, the jury did not answer the following question dealing with whether

**318**

U.S. Fire suffered prejudice because of a violation.

The form of the special verdict is so ambiguous as to constitute an abuse of the district court's discretion. The plaintiff objected to the form of the verdict and therefore preserved the issue for appeal under Federal Rule of Civil Procedure 49(a). Rule 49(a) requires a district court to submit all material issues raised by the pleadings and evidence. *See Solis v. Rio Grande City Independent School,* 734 F.2d 243, 248 (5th Cir.1984). A large part of plaintiff's evidence was devoted to the question of whether, if the September 1983 communication between Crum and Kemper did not constitute adequate notice as U.S. Fire contended, AMCA/Pressed Steel had a duty to provide notice at later dates as it received more information on the seriousness of the Meza case. The plaintiff sought a special verdict question asking the jury whether the defendant had breached the contract by failing to provide notice to U.S. Fire at a date subsequent to September 1983. By refusing to submit this question to the jury, the court eliminated a material issue from the case.

It is far from clear that this is a moot point in light of the jury's answer to the first question. It is impossible to determine from the jury's "No" answer to the ambiguously phrased question whether the jury thought that the September 1983 communication with Kemper was sufficient to put U.S. Fire on notice, or whether the jury thought that the defendant did not violate the contract at that time, but may have at a later point. The plaintiff's suggested special verdict question would have cleared up any such ambiguity. We find that the district court's failure to submit all material issues to the jury through the special verdict questions was an abuse of discretion.

## IV. CONCLUSIONS

For the reasons discussed above, we find that the judgment of the district court based on the jury's special verdict cannot be sustained. We therefore remand this case to the district court for a new trial. Circuit Rule 36 shall not apply if Senior District Judge Gordon is available and willing to retry the case.

REVERSED AND REMANDED FOR A NEW TRIAL.