[Cite as *Alpha Insulation & Water Proofing, Inc. v. Hamilton*, 2022-Ohio-1924.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Alpha Insulation & Water Proofing, Inc., | : | |
| Plaintiff-Appellant, | : | No. 21AP-541 |
| | | (C.P.C. No. 20CV-6758) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Gary J. Hamilton, | : | |
| Defendant-Appellee. | : | |

---

D E C I S I O N

Rendered on June 7, 2022

---

**On brief:** *Zeiger, Tigges & Little, LLP, Matthew S. Zeiger,* and *Lauren P. Rubin,* for appellant. **Argued:** *Matthew S. Zeiger.*

**On brief:** *Mansell Law, LLC, Greg R. Mansell, Carrie J. Dyer,* and *Rhiannon M. Herbert,* for appellee. **Argued:** *Rhiannon M. Herbert.*

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, Alpha Insulation & Water Proofing, Inc. ("Alpha"), appeals from a judgment of the Franklin County Court of Common Pleas granting a motion to dismiss filed by defendant-appellee, Gary J. Hamilton. For the following reasons we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Hamilton was the owner and president of Hamilton Benchmark, Inc., a Wisconsin corporation that was "a construction contractor business offering firestopping and passive fire protection solutions to seal wall and floor assemblies." (Compl. at ¶ 7.) Alpha is a "construction specialty contractor business that has over three decades of experience in providing commercial insulation, waterproofing, fireproofing, and

firestopping to homebuilders, businesses and residential customers."  (Compl. at ¶ 3.)
Alpha is a Texas corporation and a wholly owned subsidiary of Installed Building Products,
which has its principal place of business in Franklin County, Ohio.  In November 2018,
Alpha entered into an asset purchase agreement ("Asset Purchase Agreement") with
Hamilton Benchmark; under that agreement, Alpha purchased "substantially all" the assets
of Hamilton Benchmark for $270,152.69.  (Compl. at ¶ 9, 10.)  Alpha also hired Hamilton
as its Wisconsin branch manager.  As part of the transaction, Alpha and Hamilton entered
an Equityholder Restrictive Covenant Agreement ("ERCA") and a Key-Employee
Restrictive Covenant Agreement ("KERCA").

{¶ 3}  The ERCA and the KERCA contained non-disclosure, non-solicitation, and
non-competition provisions.  As relevant to this appeal, both the ERCA and the KERCA
contained survival provisions stating that the restrictive covenants contained in those
agreements survived termination of the agreements unless the restrictive covenants were
expressly terminated in writing.  The ERCA survival provision stated:

> Survival/Independent Agreement.  Unless expressly set forth
> in a document signed by both Parties, the restrictive covenants
> set forth herein shall survive the termination of this
> Agreement.  Any breach or alleged breach by Purchaser of any
> obligation to Equityholder shall not affect the binding nature of
> Equityholder's obligations under this Agreement or excuse or
> terminate Equityholder's obligations hereunder.

(Equityholder Restrictive Covenant Agreement at ¶ 9, Compl., Ex. A.)   Similarly, the
KERCA survival provision stated:

> Survival/Independent Agreement.  Unless expressly set forth
> in a document signed by both Parties, the restrictive covenants
> set forth herein shall survive the termination of this Agreement
> and the termination of Employee's employment for any reason,
> voluntary or involuntary.  Employee's obligations hereunder
> are independent of Employee's employment.  Any breach or
> alleged breach by Company of any obligation to Employee shall
> not affect the binding nature of Employee's obligations under
> this Agreement or excuse or terminate Employee's obligations
> hereunder.

(Key-Employee Restrictive Covenant Agreement at ¶ 7, Compl., Ex. B.)

{¶ 4}  Ultimately, the relationship between Alpha and Hamilton deteriorated; in
June 2020, they executed a severance agreement ("Severance Agreement") terminating

Hamilton's employment. As relevant to this appeal, the Severance Agreement contained a merger clause declaring it to be the entire agreement between Alpha and Hamilton:

> The Parties hereto agree that the foregoing constitutes the entire agreement between them and that there exist no other agreements, oral or written, between them relating to any matters covered by this Agreement or relating to any other matter whatsoever, whether or not within the knowledge or contemplation of either or both of the Parties hereto at the time of execution of this Agreement, with the expressly limited exception of the provisions in the November 12, 2018, Asset Purchase Agreement, providing Hamilton Benchmark, Inc. and Gary Hamilton the ability to retain the right to collect certain trade accounts receivable as provided in paragraphs 2 and 11(d) and corresponding addenda of that Agreement. This Paragraph 17 in no way alters the lease relationship between Alpha Insulation & Water Proofing, Inc. and G & A Hamilton Properties, LLC. including but not limited to the existing Commercial Triple Net Lease Agreement they executed on November 12, 2018.

(Severance Agreement at ¶ 17, Ex. 1 to Hamilton's Mot. to Dismiss.)

{¶ 5} In October 2020, Alpha filed a complaint in the Franklin County Court of Common Pleas alleging that Hamilton was engaging in conduct that violated the non-disclosure and non-competition provisions of the ERCA and the KERCA. Alpha sought declaratory judgment that the restrictive covenant provisions contained in the ERCA and the KERCA survived the termination of Hamilton's employment and that he continued to be bound by those provisions.

{¶ 6} Hamilton removed the case to the United States District Court for the Southern District of Ohio, but that court remanded the case to the Franklin County Court of Common Pleas. Hamilton then moved to dismiss pursuant to Civ.R. 12(B)(6), asserting the complaint failed to state a claim upon which relief could be granted. Hamilton argued the Severance Agreement superseded the ERCA and the KERCA and, therefore, the restrictive covenants contained in those earlier agreements were extinguished. Alpha filed a memorandum in opposition, arguing the restrictive covenants of the ERCA and the KERCA were still in effect because they were not expressly terminated by the Severance Agreement. The trial court granted Hamilton's motion to dismiss, concluding Alpha could prove no set of facts or circumstances that would entitle it to a claim for relief. Alpha timely appealed the trial court's judgment.

## II. ASSIGNMENT OF ERROR

{¶ 7}   Alpha assigns the following as trial court error:

> The Court of Common Pleas erred as a matter of law by finding that the restrictive covenant provisions in the Equityholder Restrictive Covenant Agreement ("ERCA") and Key-Employee Restrictive Covenant Agreement ("KERCA") (collectively, the "Agreements") were extinguished by a severance agreement, despite the express provisions in the ERCA and KERCA stating that the restrictive covenants survived termination of those Agreements.

## III. STANDARD OF REVIEW

{¶ 8}   Under Civ.R. 12(B)(6), a defendant may move to dismiss for "failure to state a claim upon which can be granted." " 'A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint.' "[1] *Henton v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-768, 2017-Ohio-2630, ¶ 6, quoting *Rudd v. Ohio State Hwy. Patrol*, 10th Dist. No. 15AP-869, 2016-Ohio-8263, ¶ 11.  In ruling on a Civ.R. 12(B)(6) motion to dismiss, a trial court "may not rely on allegations or evidence outside the complaint." *State ex rel. CannAscend Ohio, LLC v. Williams*, 10th Dist. No. 18AP-820, 2020-Ohio-359, ¶ 23.  "Rather, the trial court must limit its consideration to the four corners of the complaint and may dismiss the case only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to recover." *Id.*  The trial court "must presume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party," but it "need not, however, accept as true any unsupported or conclusory legal propositions advanced in the complaint." *Id.*

---

[1] As explained herein, the Severance Agreement is governed by Wisconsin law; however, because the motion to dismiss is procedural, we apply Ohio law governing the standard of review for a motion to dismiss. *See Estate of Sample v. Xenos Christian Fellowship, Inc.*, 10th Dist. No. 18AP-804, 2019-Ohio-5439, ¶ 44 ("Because the law of the forum state governs procedural matters, we look to Ohio law for the standard for summary judgment."); *Columbus Steel Castings Co. v. Transp. & Transit Assocs., LLC*, 10th Dist. No. 06AP-1247, 2007-Ohio-6640, ¶ 23 ("[T]raditional choice of law principles provide that the law of the forum state governs on procedural matters."); *Guider v. LCI Communications Holdings Co.*, 87 Ohio App.3d 412, 417 (10th Dist.1993), quoting *Shafer v. Metro-Goldwyn-Mayer Distrib. Corp.*, 36 Ohio App. 31, 37 (10th Dist.1929), quoting 12 Corpus Juris, Conflict of Laws at 483-84 (1917) (" ' "No matter what law may govern as to the validity and interpretation of a contract, the law of the forum controls as to all matters connected with procedure for its enforcement." ' ").

{¶ 9}  We review a trial court's dismissal under Civ.R. 12(B)(6) de novo.  *O'Brien v. Ashley*, 10th Dist. No. 20AP-533, 2021-Ohio-4064, ¶ 12.  " 'A judgment granting a Civ.R. 12(B)(6) motion to dismiss may be affirmed only when there is no set of facts under which the nonmoving party could recover.' "  *Id.*, quoting *Dunlop v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 16AP-550, 2017-Ohio-5531, ¶ 10.

## IV.  LEGAL ANALYSIS

{¶ 10}  We begin by considering whether the trial court erred by considering the Severance Agreement in ruling on the motion to dismiss.  Alpha attached copies of the ERCA and the KERCA as exhibits to its complaint but did not attach a copy of the Severance Agreement.  Hamilton attached a copy of the Severance Agreement as an exhibit to his motion to dismiss.  When a motion to dismiss for failure to state a claim presents matters outside the pleading and those matters are not excluded by the court, the motion shall be treated as a motion for summary judgment under Civ.R. 56.  Civ.R. 12(B).  If the trial court treats the motion as a motion for summary judgment, it must give all parties reasonable opportunity to present relevant materials.  *Id.*  In this case, the trial court did not treat Hamilton's motion as a motion for summary judgment even though the motion relied on the terms of the Severance Agreement, which had not been attached to the complaint.

{¶ 11}  Although a trial court may not consider allegations or evidence outside the complaint, the Supreme Court of Ohio has stated that " '[m]aterial incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12(B)(6) motion to dismiss.' "  *State ex rel. Peoples v. Schneider*, 159 Ohio St.3d 360, 2020-Ohio-1071, ¶ 9, quoting *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 249 (1997), fn. 1.  Accordingly, we have held that "[d]ocuments attached to or incorporated into the complaint may be considered on a motion to dismiss pursuant to Civ.R. 12(B)(6)."  *Manifold & Phalor, Inc. v. Konecranes, Inc.*, 10th Dist. No. 19AP-737, 2020-Ohio-7009, ¶ 10.  Although Alpha did not attach the Severance Agreement to its complaint, the complaint directly referred to the Severance Agreement and explained it was not attached to the complaint because of confidentiality:

> On or about June 25, 2020, the parties executed a Severance Agreement terminating Hamilton's employment with Alpha expressly due to the realignment of duties and reorganization of Alpha.  Pursuant to Ohio Rules of Civil Procedure Rule 10(D)(1), the Severance Agreement is not attached hereto

> because the Severance Agreement is confidential. Moreover, Hamilton, as a signatory to the Severance Agreement, is in possession of the Severance Agreement and attaching the Severance Agreement to this Complaint is not necessary for Hamilton to defend himself.
>
> Nowhere in the Severance Agreement did the parties expressly state that the restrictive covenants in the ERCA or KERCA did not survive Hamilton's termination as would have been required to extinguish those provisions.

(Compl. at ¶ 28-29.) These allegations made by Alpha in its complaint directly implicated the terms of the Severance Agreement and Alpha suggested that but for confidentiality concerns the Severance Agreement would have been attached. Under these circumstances, the trial court did not err by relying on the Severance Agreement in ruling on Hamilton's motion to dismiss without converting it to a motion for summary judgment, notwithstanding the fact that the Severance Agreement was not attached to Alpha's complaint. Having so concluded, we turn to the merits of Alpha's appeal.

{¶ 12} Alpha sought a declaratory judgment that Hamilton was bound by the restrictive covenants contained in the ERCA and the KERCA. Hamilton argued in his motion to dismiss that the Severance Agreement superseded and extinguished the ERCA and the KERCA. In granting the motion to dismiss, the trial court concluded the Severance Agreement was an integrated contract that prohibited Alpha from introducing other evidence regarding the parties' intent, except as related to specific provisions of the Asset Purchase Agreement. Alpha asserts the trial court erred by granting the motion to dismiss, arguing the restrictive covenants contained in the ERCA and the KERCA remained effective because they were not expressly terminated by the Severance Agreement. Alpha claims the trial court erred by failing to consider the survival provisions of the ERCA and the KERCA.

{¶ 13} The Severance Agreement contains a choice-of-law provision stating that it shall be governed and interpreted pursuant to the laws of the state of Wisconsin. Accordingly, we will apply Wisconsin law in interpreting the Severance Agreement.

{¶ 14} Contract interpretation is a question of law, which is reviewed de novo on appeal. *McAdams v. Marquette Univ.*, 383 Wis.2d 358, 377 (2018). The goal of contract interpretation is to give effect to the parties' intentions. *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 363 Wis.2d 699, 712 (2015). "When the terms of a contract are clear and

unambiguous, we construe the contract's language according to its literal meaning." *Id.* " 'We presume the parties' intent is evidenced by the words they choose, if those words are unambiguous.' " *Id.*, quoting *Kernz v. J.L. French Corp.*, 266 Wis.2d 124, 134 (Wis.App. 2003). "Only when [a] contract is ambiguous, meaning it is susceptible to more than one reasonable interpretation, may the court look beyond the face of the contract and consider extrinsic evidence to resolve the parties' intent." *Town Bank v. City Real Estate Dev., LLC*, 330 Wis.2d 340, 356 (2010).

{¶ 15} "A contract that represents the final and complete expression of the parties' agreement is considered to be fully 'integrated.' " *Id.* at 358. "[B]y definition, an unambiguous merger or integration clause demonstrates that the parties intended the contract to be a final and complete expression of their agreement." *Id.* at 361. "[W]hen [a] contract contains an unambiguous merger or integration clause, the court is barred from considering evidence of any prior or contemporaneous understandings or agreements between the parties, even as to the issue of integration." *Id.* at 360. Accordingly, if the Severance Agreement contains an unambiguous merger clause, we are prohibited from considering evidence of prior agreements like the ERCA and the KERCA.

{¶ 16} In *Town Bank*, the Supreme Court of Wisconsin examined a merger clause contained in a term credit agreement ("TCA") between a bank and a real estate developer. Under the TCA, the bank loaned funds to the developer to acquire an office building in Milwaukee. *Id.* at 345. Prior to entering the TCA, the bank had issued a financing commitment letter to the developer stating it would provide initial funding for acquisition of the building and then provide additional funding for construction of condominiums based on pre-sales. *Id.* at 347. The TCA contained a merger clause that stated:

> This Agreement, including the Exhibits attached or referring to it, the Note and the Security Documents, are intended by Customer and Lender as a final expression of their agreement and as a complete and exclusive statement of its terms, there being no conditions to the full effectiveness of their agreement except as set forth in this Agreement, the Note and the Security Documents.

*Id.*

{¶ 17} After the developer purchased the office building, the bank ultimately refused to loan the additional funds for construction. The bank sought a declaratory judgment that

it was not obligated to provide that additional loan because the developer failed to satisfy its obligations under the commitment letter. *Id*. at 352. The developer counterclaimed for damages based on breach of the commitment letter. The trial court denied the bank's motions for summary judgment and a jury ruled in favor of the developer. *Id*. at 352-54. An appellate court reversed, holding that the TCA was unambiguous and constituted the only agreement under which the bank had loan obligations to the developer. *Id*. at 354.

{¶ 18} On appeal, the Supreme Court of Wisconsin concluded that the merger clause contained in the TCA unambiguously demonstrated the parties' intent to exclude additional understandings and agreements because it " 'expressly negatives collateral or antecedent understandings' " by setting forth an exhaustive list of documents included in the agreement. *Id*. at 361, quoting *Dairyland Equipment Leasing, Inc. v. Bohen (In re Spring Valley Meats)*, 94 Wis.2d 600, 608 (1980). The court concluded the parties intended to exclude any understanding or agreement not contained in the TCA or the other documents specified in the merger clause—i.e., the exhibits, the note, and the security documents. The court also found it significant that the merger clause in the TCA "exhibit[ed] different capitalization to denote 'this <u>A</u>greement,' meaning the TCA itself, and 'their agreement,' meaning the parties' agreement altogether." (Emphasis sic.) *Id*. at 362. The court concluded that the use of a lowercase 'a' when referring to 'their agreement' was intended to avoid confusion between the parties' overall financing agreement and the TCA. Concluding that the TCA was an unambiguous, fully integrated agreement, the court refused to consider extrinsic evidence proffered by the real estate development company purporting to explain the parties' intent, including the financing commitment letter. *Id*. at 364.

{¶ 19} In this case, the merger clause contained in the Severance Agreement employs language more expansive than the one considered in *Town Bank*. It expressly states that there are "no other agreements" between Alpha and Hamilton relating to matters covered by the Severance Agreement "or relating to *any other matter whatsoever*, whether or not within the knowledge or contemplation of either or both of the Parties." (Emphasis added.) (Severance Agreement at 4.) Similar to the merger clause evaluated in *Town Bank*, the Severance Agreement merger clause uses capitalization to distinguish between the Severance Agreement and the parties' agreement as to any other matters. The

Severance Agreement merger clause contains a specific exception for certain provisions of the Asset Purchase Agreement, but there are no exceptions for the restrictive covenants in the ERCA or the KERCA. The Severance Agreement merger clause " 'expressly negatives collateral or antecedent understandings' " by stating there are no other agreements beyond the limited exception set forth within the merger clause. *Town Bank* at 361, quoting *Bohen* at 608.

{¶ 20} Alpha argues *Town Bank* is distinguishable because developer in that case sought to vary the terms of the TCA by introducing the commitment letter. Alpha asserts that no provision of the Severance Agreement would be varied or contradicted by the restrictive covenants contained in the ERCA or the KERCA. The Severance Agreement contained a non-disclosure clause providing that Hamilton would not disclose any confidential information for one year. By contrast, the KERCA contained a 36-month non-disclosure provision. Thus, the non-disclosure provision in the KERCA would alter the non-disclosure limitation imposed on Hamilton under the Severance Agreement.

{¶ 21} Alpha asserts the Severance Agreement merger clause is ambiguous because it does not expressly terminate the restrictive covenants contained in the ERCA and the KERCA, or even mention those covenants. Ambiguity is determined by examining the four corners of a contract. *See Spencer v. Spencer*, 140 Wis.2d 447, 450 (Wis.App. 1987) ("[A]fter a contract has been found to be ambiguous, courts may look beyond its face and consider extrinsic evidence."); *Town Bank* at 356 ("Only when the contract is ambiguous * * * may the court look beyond the face of the contract and consider extrinsic evidence to resolve the parties' intent."). Therefore, Alpha may not rely on provisions contained in the ERCA and the KERCA to demonstrate ambiguity in the Severance Agreement.

{¶ 22} Alpha also argues the Severance Agreement only related to Hamilton's employment relationship with Alpha. Alpha claims the merger clause in the Severance Agreement was irrelevant to Hamilton's obligations under the ERCA and the KERCA and did not prohibit the trial court from considering evidence regarding those agreements. The broad language employed in the Severance Agreement merger clause belies this argument. As noted above, the Severance Agreement merger clause expressly stated not only that there were "no other agreements" between Alpha and Hamilton relating to matters covered by the Severance Agreement but also that there were no other agreements "relating to *any*

*other matter whatsoever*." (Emphasis added.) (Severance Agreement at 4.) Thus, the plain language of the merger clause used by the parties in the Severance Agreement demonstrates their intent to address all matters between them, not just the employment relationship.

{¶ 23} Alpha cites several decisions from outside Wisconsin where courts held that certain provisions in earlier agreements survived notwithstanding the parties entering into subsequent agreements containing merger clauses. However, as Alpha acknowledges, those cases involved basic merger clauses. *See, e.g., Ohio State Univ. Pathology Servs., LLC v. Aetna Health, Inc.*, S.D. Ohio No. 2:11-cv-005 (May 4, 2011) (integration clause stated that latter agreement "supercedes [sic] any and all prior and contemporaneous oral and written representations, communications, proposals or agreements not expressly included" in the latter agreement). By contrast, the Severance Agreement merger clause was broader than a basic merger clause because it expressly provided that there were no other agreements between Alpha and Hamilton relating to "any other matter whatsoever."

{¶ 24} Like the Supreme Court of Wisconsin in *Town Bank*, we conclude the Severance Agreement merger clause is unambiguous because it "demonstrates that the parties intended the contract to be a final and complete expression of their agreement." *Town Bank* at 361. Thus, "our attempt to determine the parties' intent ends with the four corners of the [Severance Agreement], without resort to extrinsic evidence." *Id.* The parties' intent is evidenced by the words they chose. *Ash Park* at 712. In this case, the parties chose broad language indicating that the Severance Agreement was the only agreement between them. Because the Severance Agreement contains an unambiguous merger clause we are "barred from considering evidence of any prior or contemporaneous understandings or agreements between the parties." *Town Bank* at 360.

{¶ 25} Alpha sought a declaratory judgment that the restrictive covenants contained in the ERCA and the KERCA remained in force and that Hamilton was bound by them. Under the terms of the Severance Agreement, the only agreement between Alpha and Hamilton was the Severance Agreement and the specific exceptions set forth in the Severance Agreement merger clause. The restrictive covenants contained in the ERCA and the KERCA were not included in the specific exceptions under the Severance Agreement merger clause. Therefore, there was no set of facts under which Alpha could recover on a claim for declaratory judgment that Hamilton was bound by those covenants and the trial

court did not err by granting Hamilton's motion to dismiss for failure to state a claim on which relief could be granted.  Accordingly, we overrule Alpha's sole assignment of error.

**V.  CONCLUSION**

{¶ 26} For the foregoing reasons, we overrule Alpha's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and BEATTY BLUNT, JJ., concur.

_____