FOURSQUARE PROPERTIES JOINT VENTURE I, a partnership,
Plaintiff-Appellant,

v.

JOHNNY'S LOAF & STEIN, LTD., a Wisconsin corporation,
Johnny's Loaf & Stein of Marinette, Ltd., a Wisconsin corporation, John Keegan and Donald Keegan,
Defendants-Respondents,

FIRST NATIONAL BANK OF MARINETTE,
a Wisconsin banking corporation, Defendant.†

Court of Appeals

*No. 82–2430. Submitted on briefs October 10, 1983.—
Decided December 6, 1983.*
(Also reported in 343 N.W.2d 126.)

For the appellant the cause was submitted on the briefs of *Faller, Pleger & Wilson* and *Gerald L. Wilson* of Marinette and *Phillips, Gross & Aaron, P.A.,* of counsel, of Minneapolis, Minnesota.

For the respondents the cause was submitted on the brief of *Condon, Hanaway, Wickert, Fenwick & Strong, Ltd.,* and *Gary A. Wickert* of Green Bay.

Before Foley, P.J., Dean and Cane, JJ.

† Petition to review denied.

CANE, J.   Foursquare Properties appeals a judgment that dismissed its complaint for eviction and rent due, declared the tax clause of its lease with Johnny's Loaf & Stein unconscionable as applied, and recalculated Johnny's tax liability.  Because the trial court correctly concluded that the tax clause was unconscionable, we affirm the judgment.

Johnny's is a father-and-son restaurant business operated by John and Donald Keegan.  The Keegans entered into a fifteen-year lease with Foursquare in April, 1978, for space in which to operate a restaurant in the Pine Tree Shopping Center in Marinette.  The Keegans had no formal business training but previously negotiated a lease, with the aid of their attorney, for a Johnny's restaurant in Green Bay.  The Keegans did not employ an attorney in negotiating the lease for Johnny's in Marinette.  They dealt with a representative of Foursquare experienced in lease negotiations and began with a form lease drafted by Foursquare.  Except for filling in some blanks, few changes were made in the document.  No alterations were made in the lease's tax provisions, which were not discussed in the negotiations.  The Keegans had sufficient time to read the entire document and to consult an attorney before signing the lease.

Section 2.3 of the lease provided a formula for calculating Johnny's share of the shopping center's real estate taxes.  It read, in pertinent part:

Tenant's share of real estate taxes shall be computed by multiplying the total amount of such taxes by a fraction, the numerator of which shall be the number of square feet in the leased premises, the denominator of which shall be the total number of square feet of leaseable space in the Shopping Center . . . less the square footage of buildings and premises leased to any other tenant in respect to which Landlord has assumed and/or is burdened with said taxes in whole or in part.

Twenty-four of Pine Tree's tenants had this standard tax clause. All but one of the remaining thirteen had lease provisions imposing tax contributions smaller than if calculated by using the percentage of their premises area to the total leaseable area (pro rata share).

The Keegans initially paid their share of the shopping center's taxes as computed under sec. 2.3. Due in part to Foursquare's agreement with the City of Marinette, whereby the center would be taxed at one-third of its assessed value the first year, two-thirds the second, and its full assessed value the third year, Johnny's tax obligations computed under sec. 2.3 increased from $1,373 in 1979 to $11,329 in 1981. Johnny's was unaware of Foursquare's agreement with the city when it signed the lease, and eventually refused to pay the full amount of its tax contribution as assessed by Foursquare.

The trial court concluded that sec. 2.3 was "ambiguous, misleading and, as applied . . . unconscionable." It dismissed Foursquare's complaint and recalculated Johnny's tax obligations based on a pro rata formula resulting in no taxes due. It also ordered that sec. 2.3 be applied to limit Johnny's tax contributions to an amount based on the ratio of its leased area to the total leaseable area of the shopping center from 1982 through the end of the lease term.

Interpretation of a written contract, such as this lease, is a question of law, which we review independently of the trial court. *Jones v. Jenkins,* 88 Wis. 2d 712, 722, 277 N.W.2d 815, 819 (1979). A contract provision that is reasonably susceptible to more than one construction is ambiguous. *Id.* A contract is unconscionable when no decent, fair-minded person would view the result of its enforcement without being possessed of a profound sense of injustice. *See Discount Fabric House of Racine, Inc. v. Wisconsin Telephone Co.,* 113 Wis. 2d 258, 261, 334 N.W.2d 922, 924 (Ct. App. 1983).

Foursquare contends that the tax clause of its lease is not ambiguous. If the clause is ambiguous, the trial court cannot redraft the lease, as it essentially did in this case, but rather must adopt the most reasonable of the possible constructions. *See Jones,* 88 Wis. 2d at 722, 277 N.W.2d at 819. In this case, however, the trial court did not adopt any particular construction of the tax clause, but instead treated its ambiguity as a factor in concluding that it was unconscionable. The court did not reject Foursquare's interpretation of the contract and find another more reasonable, but instead appeared to consider any of the alternative constructions unconscionable. Because adoption of Foursquare's construction of the tax clause supports the trial court's conclusion that the lease is unconscionable, we consider any error the trial court may have made in concluding the clause ambiguous, or in failing to adopt a construction of it, to be harmless.

The trial court decided that, "in effect, under Foursquare's application of the tax clause, Johnny's gave Foursquare a blank check to relieve other tenants of the tax obligation at Johnny's expense. Such a result is unconscionable." We agree. Foursquare contends that sec. 2.3 allows it to reduce the denominator of the fraction used to compute tax contributions by subtracting the total area of each tenant paying a smaller proportionate share of the center's taxes than those tenants with the standard tax clause, such as Johnny's. Although we recognize the need of a shopping center to provide incentives for certain "anchor" businesses to become tenants, sec. 2.3 goes too far.

Foursquare's construction of the tax clause allows it to collect far more than the shopping center's tax obligation from its tenants. Even though sec. 2.3 makes the standard clause tenants responsible for all real estate taxes, tenants with more favorable tax clauses may still be required to pay some "tax" contribution. Foursquare thus

receives a windfall. In 1981, for example, Foursquare's total tax bill for the center was $183,569. Foursquare collected $103,245.96 from tenants without the standard tax clause. Under its interpretation of the lease, Foursquare could have had the standard clause tenants pay the entire tax bill and kept the $103,245.96 as profit. Foursquare decided instead to deduct that amount from the total tax bill before calculating Johnny's taxes. Foursquare previously described this credit as a "gift." The lease did not require it to make such credits and would not prevent Foursquare from using its "tax" clause as an indirect source of profit. Such a result would produce in fair-minded persons a profound sense of injustice.

*By the Court.*—Judgment affirmed.