580 So.2d 628 (1991)
SOUTHWORTH & McGILL, P.A., Appellant,
v.
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY and Bellsouth Advertising and Publishing Corporation, Appellees.
No. 87-1198.
District Court of Appeal of Florida, First District.
March 1, 1991.
*629 J. Dixon Bridgers, III and Carol Ann Ruebsamen of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Pensacola, for appellant.
Robert L. Crongeyer and Larry A. Matthews of Beggs & Lane, Pensacola, for appellees.
SMITH, Judge.
This cause is before us on appeal from a final judgment granting appellees/defendants' motion for judgment on the pleadings and limiting damages in accord with an exculpatory provision in the contract between the parties. On appeal, the issue is whether the trial court erred in ruling that the exculpatory provision was valid and controlling as a matter of law. We affirm in part and reverse in part.
The facts based on the record before us are that appellant law firm filled out appellees' form contract to purchase advertising space in the 1984/85 directory and paid the required fee. The agreement consisted of several pages entitled "Directory Advertising Order," a printed form which, on the reverse side, bears a list of "Terms and Conditions" including the following provision:
[BELLSOUTH ADVERTISING & PUBLISHING CORPORATION'S] LIABILITY AND THE TELEPHONE COMPANY'S LIABILITY (IF ANY) ON ACCOUNT OF OMISSION OR ERRORS IN SUCH ADVERTISING SHALL IN NO *630 EVENT EXCEED THE AMOUNT OF CHARGES FOR THE ADVERTISING WHICH WAS OMITTED OR IN WHICH THE ERROR OCCURRED IN THE THEN CURRENT DIRECTORY ISSUE AND SUCH LIABILITY SHALL BE DISCHARGED BY ABATEMENT OF THE CHARGES FOR THE PARTICULAR LISTING OR ADVERTISING IN WHICH THE OMISSION OR ERROR OCCURRED.
The agreement sets out the name of the firm to be listed in the directory as "Southworth and McGill, P.A." Formerly, the firm was "Kirtz, Southworth, and McGill." However, the Florida Bar suspended the first-named partner from practice. As a result of that suspension, the first-named partner ceased to be a member of the firm. The complaint alleges that the remaining partners had taken great pains to disassociate themselves from the suspended former partner.[1]
Appellant submitted the correct information to appellees, but appellees published incorrect information. The yellow pages showed the suspended former member as still being the lead partner in the firm and showed the firm as offering the legal services that the former member had performed but which were no longer offered by the firm.[2]
Immediately following the publication of the 1984/85 directory, Mr. Southworth of appellant firm wrote to appellees, strongly protesting the inaccuracies and pointing out the seriousness of the errors due to the circumstances involved. A copy of that letter is attached to the complaint. Despite the letter, appellees repeated the same errors in the next year's (1985/86) directory. Appellant alleges various business damage, including expenses incurred in an effort to rectify the situation caused by the erroneous ads.
Appellant filed a complaint alleging negligence, gross negligence, and breach of contract.[3] A copy of the listing agreement was attached to the complaint. Appellees answered with a general denial of breach or liability. Subsequently, appellees filed a motion for judgment on the pleadings contending, among other things, that appellant's recovery, if any, was limited by the terms of the exculpatory clause to a refund of charges for the listing or advertising. Appellant's legal memorandum in response raises "unconscionability" as an absolute defense to enforcement of the exculpatory clause.
The trial court viewed the exculpatory provision as determinative of the case and entered judgment on the pleadings for appellees. Damages for breach of contract were limited to the amount paid for the listings ($645.60) in accordance with the exculpatory clause.
In reviewing the judgment on the pleadings, this court is limited to the pleadings before the court below. Factual matters which are addressed in the brief but are not part of those pleadings are not before us. We observe, initially, that many of the factual matters argued by appellant in its brief are unsupported by allegations contained in the pleadings.
"Unconscionability" as a defense to enforcement of the exculpatory clause, insofar as a ruling on that issue depends upon development of a factual basis for its application, has not been properly raised in this case. There is authority in Florida, and from other jurisdictions, that in actions based on contract "unconscionability" must be pleaded and proved by the party asserting *631 it.[4]Kohl v. Bay Colony Club Condominium, 398 So.2d 865 (Fla. 4th DCA 1981); Rozeboom v. Northwest Bell Tel., 358 N.W.2d 241 (S.D. 1984). Here, the listing contract attached to the amended complaint contains a clause limiting liability for "omission or errors in such advertising." The attached contract becomes a part of the complaint to the same extent as if contained in the body of the complaint itself. Further, if an attached document negates the pleader's cause of action, the plain language of the document will control and may be the basis for a motion to dismiss. See, Health Application Systems v. Hartford Life, 381 So.2d 294, 297 (Fla. 1st DCA 1980), and authorities therein cited. If appellants wished to avoid the plain provisions of the clause limiting liability, it was incumbent upon them to plead "unconscionability," and at least an outline of the basic facts upon which they intended to base such claim, which they failed to do. The issue was, however, presented by argument in the court below, as here, and as a practical matter discussion of the legal aspects of this defense is unavoidable at this stage.
Appellant's argument seeks to have this court align itself with the minority view condemning such exculpatory clauses in yellow page contracts. After much consideration of the conflicting decisions on this issue, we adhere to the majority view which holds that exculpatory clauses limiting liability for ordinary negligence in the publication of yellow page advertising are enforceable as a matter of private contract, and do not violate public policy. See, Annotation, 47 A.L.R.4th 882 (1986), "Liability of Telephone Company for Mistakes in or Omissions from its Directory." Under the majority view, the claim for economic damages for the 1984/85 directory, which is based solely on negligent breach of contract, is barred by the exculpatory clause. However, as to the 1985/86 directory, the breach of contract count specifically alleges that the repetition of the prior year's errors after these errors were brought to the defendant's attention constituted "gross negligence," in that the defendants "willfully and maliciously failed to change the advertisement." Under the majority view cases cited in the following discussion, the exculpatory clause does not protect against willful, malicious, or grossly negligent actions.
As noted in Allen v. General Tel. Co. of Northwest, Inc., 20 Wash. App. 144, 578 P.2d 1333 (1978), the courts have varied in their approach to the issue, some construing statutes regulating public utilities as providing a complete system of regulation, including yellow page services, so that limitations of liability are binding and enforceable just as other rules or regulations involving rates or matters affecting rates; other jurisdictions view their statutes as governing the white page services but not the yellow page service, the latter being considered as a matter of private contract;[5] and still other courts do not refer to their public utility statutes, but base their decisions on the private contractual relationship between the parties. Id. 578 P.2d at 1335.
As stated by the Washington court: "Virtually all jurisdictions have enforced such limitations and disclaimers of liability, whether contained in a filed tariff or a private contract, unless the company's negligence *632 is willful or gross." Allen v. General Tel. Co., supra, 578 P.2d at 1335. See also, State ex rel Mountain States Tel. & Tel. Co. v. District Court, 160 Mont. 443, 503 P.2d 526 (1972); Robinson Insurance & Real Estate, Inc. v. Southwestern Bell Telephone Co., 366 F. Supp. 307 (W.D.Ark. 1973); Gas House, Inc. v. Southern Bell Tel. & Tel. Co., 289 N.C. 175, 221 S.E.2d 499 (1976); Louisville Bear Safety v. South Central Bell Tel., 571 S.W.2d 438 (Ky.App. 1978); Willhite v. South Central Bell Telephone Co., 693 F.2d 340 (5th Cir.1982).
Decisions on both sides of the unconscionability issue have been accompanied by carefully reasoned opinions, including those expressing the minority view, such as Allen v. Michigan Bell Telephone Company, 18 Mich. App. 632, 171 N.W.2d 689 (1969).[6] See also, Morgan v. South Central Bell Telephone Co., 466 So.2d 107 (Ala. 1985), in which the court found that omission of the plaintiff's listing four times in succession (the evidence was also found sufficient to establish fraud as to certain years) subjected the telephone company to tort liability, and that a clause in the 1980 advertising order limiting liability was invalid, under criteria stated, because contrary to public policy.[7] Although the Morgan court employed rhetoric on the unconscionability issue similar to that found in Allen (Mich. App.), supra, and other minority view cases, its refusal to allow the telephone company to escape liability in the face of its own egregious and even fraudulent conduct places the result reached fairly in line with the view espoused by the majority courts  that an "errors and omissions" exculpatory clause protects a company only to the extent that its actions amounted to ordinary negligence. State ex rel Mountain States T. & T. Co. v. District Court, supra; Robinson Insurance & Real Estate, Inc. v. Southwestern Bell Telephone Co., supra; Allen v. General Telephone Co. of Northwest, Inc., supra; and Willhite v. South Central Bell Telephone Co., supra. In any event, the concerns expressed by the Allen (Mich. App.) and Morgan courts with respect to, among other things, the monopolistic nature of the yellow page advertising service and the unequal bargaining power of the contracting party, have been fully explored and countered by the opinions in other cases, particularly State ex rel Mountain States, supra (monopolistic character of yellow pages advertizing is not exactly "a one way street," considering its desirability and more reasonable cost than marketplace advertising; and mere fact of claimed unequal bargaining power, not uncommon in today's world of commerce, does not render a limitation of liability unconscionable); Gas House, Inc., supra (inequality of bargaining power between telephone company and customer desiring to advertize "is more apparent than real," and is not different from that which exists in any other case in which a potential seller is the only supplier of the particular service or article desired; and there are many other modes of advertising to which one may turn); Louisville Bear Safety, supra (yellow pages are a unique advertising device for *633 which there is no practical substitute, and although there may be no alternative available at comparable costs, there are other means of advertising available; and further, contract clause limiting liability contributes to the comparatively low cost of yellow page ads).
The amended complaint in this case charges that the errors and omissions in the 1984/85 directory were the result of mere negligence. It is clear, therefore, under the more numerous and, in our opinion, the more persuasive authorities, that no cause of action for damages in excess of the limiting clause is maintainable with respect to the 1984/85 directory. This holding is consistent with Florida case law. Although it is true, as argued by appellant, that no Florida court has specifically articulated a response to the "unconscionability" argument, Florida cases have ruled consistently with the majority view. Advance Service, Inc. v. General Telephone Co. of Fla., 187 So.2d 660 (Fla. 2d DCA 1966) (action seeking recovery of business losses caused by erroneous omission of business name under air conditioning "service" heading in yellow pages was barred by exculpatory clause in yellow pages listing contract); Maddalena v. Southern Bell Tel. & Tel. Co., 382 So.2d 1246 (Fla. 4th DCA 1980) (the compounding effect of successive acts  repetition of boldface listing error for two succeeding years, and unilateral termination on two occasions of "reference of calls" service, and assignment of customer's former number to another subscriber while still listed as appellant's  fall outside the scope of the exception, and may in fact amount to gross negligence).
In a Third District case, Electronic Security Systems v. Southern Bell, 482 So.2d 518 (Fla. 3d DCA 1986), the court affirmed dismissal of two counts based on tort, and also affirmed a summary judgment on a breach of contract claim upholding the telephone company's limitation of liability clause. The court supported its decision by citation of cases from other jurisdictions said to recognize the "majority view" approving similar provisions limiting liability. It is not clear from the opinion whether the court considered the viability of the "errors and omissions" limiting clause in the face of a count of the complaint alleging that the telephone company had intentionally omitted the plaintiff's advertising. However, many of the majority view cases cited by the court make it clear that willful, malicious or grossly negligent conduct by the telephone company is not within the scope of the exculpatory clause.[8] It is noteworthy that the ruling in Electronic Security Systems, supra  that a count seeking damages in tort for negligence based solely on the breach of contract claim could not be maintained  was approved by the Florida Supreme Court in A.F.M. Corporation v. Southern Bell Telephone & Telegraph Co., 515 So.2d 180 (Fla. 1987). The A.F.M. court held, in answer to questions certified by the Eleventh Circuit Court of Appeal, that Florida law does not permit the purchaser of services to recover economic losses in tort without a claim for personal injury or property damage. More to the point, the A.F.M. court held that a tort claim for economic losses resulting from errors in yellow pages listings and the telephone company's automatic referral system, could not be maintained.[9]
Finally, since the count for breach of contract for errors in the 1985/86 listing alleges that these errors resulted from willful, malicious, or grossly negligent actions on the part of the defendants, the exculpatory clause limiting liability for "errors and *634 omissions" was ineffective to bar the action for damages for that directory year. As frequently recognized by the Florida courts, exculpatory clauses are not favored in the law, and Florida law requires that such clauses be strictly construed against the party claiming to be relieved of liability.[10] Such clauses are enforceable only where and to the extent that the intention to be relieved was made clear and unequivocal in the contract, and the wording must be so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away. Fuentes v. Owen, 310 So.2d 458 (Fla. 3d DCA 1975) (broad form exculpatory clause in lease, while sufficient to bar an action based on the landlord's negligence, would not be sufficient to bar action based on intentional tort). No reasonable argument can be made that the errors and omissions clause here can be said to cover intentional and malicious, or grossly negligent actions on the part of the appellees. Whether these allegations can be proven, on the other hand, is a different matter; and nothing in our decision and opinion should be interpreted as an indication that the mere repetition of the claimed errors over a two-year period, standing alone, would justify a finding of willful, malicious, or grossly negligent action, although such actions would be a matter for consideration in the light of all other evidence.
We would therefore reverse and remand for trial with respect to damages for the 1985/86 directory year, based upon breach of contract occasioned by willful, malicious, or grossly negligent conduct on the part of appellees.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
NIMMONS, J., concurs.
BOOTH, J., concurs in part and dissents in part.
BOOTH, Judge, concurring in part and dissenting in part.
I would hold that the complaint in its entirety states a cause of action and is not subject to judgment on the pleadings.
NOTES
[1] Letter from appellant to appellees attached to complaint specifies that efforts of the remaining partners to disassociate themselves from the suspended former member included moving to a new office and installing a new phone system with no referral service from the old number.
[2] Other errors in the published advertisement are alleged, to wit, including the name of a former associate who was no longer with the firm.
[3] The trial court entered judgment on the pleadings as to the tort claim, finding that there was no tort independent of the breach of contract and no basis for award of punitive damages. Appellant does not contest this ruling on appeal. AFM Corp. v. Southern Bell Telephone and Telegraph Co., 515 So.2d 180 (Fla. 1987).
[4] In actions sounding in tort, the defendant relying upon an exculpatory clause would most likely be compelled to assert the clause as an affirmative defense.
[5] Publication and distribution of a directory containing an alphabetical listing of subscribers and telephone numbers is mandatory in Florida under rule of the Florida Public Service Commission, Rule 25-4.040, F.A.C. There are no laws or rules with respect to the yellow page advertising directory with exception of provisions with respect to allocation of gross profits from advertising in connection with establishing rates. § 364.037, F.S. (1989). It has been held that directory advertising is not within the scope of the telephone company's function as a regulated industry in Florida. Executive Services v. Southern Bell Telephone and Telegraph Company, 514 F. Supp. 430 (S.D.Fla. 1981); but see, General Telephone Company of Florida v. Marks, 500 So.2d 142 (Fla. 1986) (Public Service Commission rule including white pages in calculating profit derived from directory advertising was within Commission's authority under enabling legislation).
[6] The Allen (Mich. App.) case was criticized, however, a few years after its release, in Robinson Ins. and Real Estate, Inc. v. Southwestern Bell Tel. Co., supra, at page 310, as representing "a departure from the majority view recognizing freedom to contract, ... based upon faulty notions of the public interest, and ... not in keeping with commercial realities." See also, Allen v. Michigan Bell Telephone Company, 61 Mich. App. 62, 232 N.W.2d 302 (1975), adhering to original Allen decision as law of the case. Cf., Discount Fabric House of Racine, Inc. v. Wisconsin Telephone Company, 117 Wis.2d 587, 345 N.W.2d 417, 419 and 424 (1984) (court acknowledged that yellow page advertising has generally been construed as a matter of private contract under which parties may validly limit their liability, and that Allen case (Mich. App.) is the only case on the merits finding telephone company's exculpatory clause to be against public policy; court nevertheless adopted minority view, holding exculpatory clause under review unconscionable and unenforceable as contrary to public policy, and reversed Wisconsin court of appeals' decision, 113 Wis.2d 258, 334 N.W.2d 922 (App. 1983) holding clause valid).
[7] In Morgan, the plaintiffs, two periodontists, alleged negligence, breach of contract and fraud; and these issues were submitted to the jury with respect to all directory errors except for the year 1980, as to which recovery was allowed based on negligence or breach of contract.
[8] The reason for absence of discussion in the Electronic Security opinion of the effect of intentional omissions is not apparent; as a matter of speculation, it may be accounted for either by the lack of a pleading asserting intentional acts in connection with the breach of contract claim, or by an absence of any evidentiary fact supporting such claim sufficient to defeat the motion for summary judgment.
[9] The A.F.M. decision would seem to put to rest any notion, suggested by dicta found in this court's opinion in Allen v. Southern Bell Telephone & Telegraph Co., 285 So.2d 634 (Fla. 1st DCA 1973), that a subscriber, unable to prove willful and malicious or grossly negligent conduct, might nevertheless overcome the effect of an exculpatory clause in a complaint based on simple negligence.
[10] See Van Tuyn v. Zurich American Insurance Company, 447 So.2d 318, 320 (Fla. 4th DCA 1984); O'Connell v. Walt Disney World, 413 So.2d 444, 446 (Fla. 5th DCA 1982); Fuentes v. Owen, 310 So.2d 458, 459 (Fla. 3d DCA 1975); Middleton v. Lomaskin, 266 So.2d 678, 680 (Fla. 3d DCA 1972).