GUNDRUM, J.
¶1 Some cases are just messy, and there are no great answers. This is one of them.
¶2 We accepted the interlocutory appeal[1] of Kathryn Kershaw and The Lord's Highlands, Inc., to determine if the circuit court erred in ordering, after a trial to the court, that the two properties at issue in this case be sold to a third party. Specifically, Kershaw insists the court erred in not rescinding both the contract through which she previously had sold the properties to Kwico Investments, LLC, and the deeds by which she transferred ownership of the properties to Kwico. Kershaw also complains that the court subsequently ordered the properties to be sold to a third party as one, instead of ordering that the property that was vacant be subdivided and the parcels sold separately. We conclude the court handled this messy case as ably as any court could and did not err.
BACKGROUND
¶3 In the fall of 2014, Kershaw was on the verge of tax foreclosure. After being turned down by several financial institutions for a loan to "save" her two properties, Kershaw turned to a long-time acquaintance, Richard Christl. Christl, who was in the business of buying and "flipping" houses, also would not loan Kershaw funds, but the two executed a one-page contract by which Christl, through his limited liability company, Kwico, purchased from the unrepresented Kershaw the property on which she had lived for more than forty years and an adjacent vacant property.[2] To effectuate the purchase, Christl paid off $ 27,000 Kershaw owed in overdue property taxes and negotiated a $ 30,000 payment to satisfy a $ 60,000 mortgage Kershaw had with former neighbors. After the contract to sell the properties and the deeds to transfer title were signed, Kershaw's daughter and son-in-law signed a rental agreement with Kwico, and they, along with Kershaw, continued to reside in the home in which they all had been living.
¶4 Kershaw subsequently sued Kwico and Christl, claiming misrepresentation by Christl and asserting that the contract for sale of the properties was unconscionable. She sought, inter alia, rescission of the contract and the deeds. After a trial to the circuit court, the court found that no misrepresentation had occurred and determined the sale was ultimately valid. It further determined that even though the sale was a distressed sale, the price Kwico paid for the properties was nonetheless procedurally and substantively unconscionable. The court found, however, that Kershaw was not in a financial position to return Kwico to its precontract financial status quo-she had presented no evidence at trial as to how she would finance rescission-and thus determined rescission was not a remedy available to her. The court also considered reformation of the contract in favor of Kershaw and against Kwico, but after briefing by the parties, determined the properties should be placed on the market, sold, and the proceeds used to pay Kwico a reasonable amount for what it had expended for the properties plus a reasonable profit, with Kershaw receiving the remainder.
¶5 The two properties were marketed to be sold as one. Learning of this, Kershaw filed a motion for an order establishing the terms of the listing contract, in which motion she proposed that the vacant property be subdivided and the resulting parcels sold separately. On April 7, 2017, an offer to purchase the two properties as one for $ 200,000 was received, and Christl subsequently moved the court to approve the sale. At the May 4, 2017 evidentiary hearing on that motion, Kershaw insisted the properties should be sold separately and the vacant lot subdivided to maximize the amount of money that could be procured from their sale and ultimately provided to Kershaw.[3] The court ordered that the pending sale for $ 200,000 move forward, which led to Kershaw's interlocutory appeal. The proposed sale has been stayed while this appeal is pending.[4]
DISCUSSION
¶6 Kershaw's chief complaint is that having found unconscionable the price Kwico paid to purchase the properties from Kershaw, the circuit court erred in declining to rescind the sales contract and related deeds.[5] She also asserts the court erred in ordering the properties to be sold as one, as opposed to ordering the vacant lot subdivided and the parcels sold separately. We conclude the court did not err.
¶7 Rescission is an equitable remedy. See Tietsworth v. Harley-Davidson, Inc. , 2004 WI 32, ¶36, 270 Wis. 2d 146, 677 N.W.2d 233. To grant this remedy, there must be an "affirmative showing upon which the court would properly base rescission." Mueller v. Michels , 184 Wis. 324, 334, 197 N.W. 201 (1924). The decision to grant or deny a request for rescission of a contract is a matter for the discretion of the circuit court, Woldenberg v. Riphan , 166 Wis. 433, 436, 166 N.W. 21 (1918) ; thus, we will reverse such a decision only if we determine the court erroneously exercised its discretion, a "highly deferential" standard, Klawitter v. Klawitter , 2001 WI App 16, ¶8, 240 Wis. 2d 685, 623 N.W.2d 169 (2000) (citation omitted). Additionally, we review a specific remedy ordered by a court in equity-such as the court's order here that the properties be sold pursuant to the $ 200,000 offer-for an erroneous exercise of discretion. See Schmit v. Klumpyan , 2003 WI App 107, ¶26, 264 Wis. 2d 414, 663 N.W.2d 331 (A court in equity has "the discretion to fashion a remedy that meets the needs of the specific case."). "Discretionary acts are upheld if the circuit court 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.' " Klawitter , 240 Wis. 2d 685, ¶8 (citation omitted). On appeal, the appellant, here Kershaw, bears the burden of convincing us the circuit court erroneously exercised its discretion. Gaethke v. Pozder , 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381. We are not convinced.
Rescission
¶8 Kershaw relies upon and directs us to RESTATEMENT (SECOND) OF CONTRACTS , § 208 ( AM. LAW INST. 1981), which states:
If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.
(Emphasis added.) Here, the circuit court determined that the contract to sell the properties was "valid" but that one portion of the contract, the price, was unconscionably low.[6] Considering the very restatement principles relied upon by Kershaw, rather than "throwing [the contract] out or doing otherwise," as the court stated it, the court elected to "correct" the unconscionable purchase price, i.e., it chose in its discretion, consistent with the restatement language, to "limit the application" of that "unconscionable term" so "as to avoid" the "unconscionable result" to Kershaw. See RESTATEMENT 2 D OF CONTRACTS , § 208. While Kershaw complains that the court did not instead order the contract rescinded, the court acted reasonably in equity as it was entitled to do.
¶9 An abundance of evidence was presented at trial as to Kershaw's history of dire financial problems and significant difficulty in affording the properties. Based upon that evidence and the fact Kershaw presented no evidence to indicate her financial situation had improved, the circuit court found that she was not in a position to return Kwico to the precontract status quo-that is, to pay back to Kwico the $ 27,000 it paid to pay off her delinquent taxes and the $ 30,000 it paid to satisfy her $ 60,000 mortgage with the former neighbors-if the properties were to be returned to her through rescission. Kershaw presented to the court promises based only on speculation,[7] which is not enough. See State v. Hanson , 2001 WI 70, ¶31, 244 Wis. 2d 405, 628 N.W.2d 759 ("The legal effect of a rescission is an undoing from the beginning and a return to status quo ante."); Seidling v. Unichem, Inc. , 52 Wis. 2d 552, 557-58, 191 N.W.2d 205 (1971) (With rescission, a party to a contract is "entitled" to be restored to the precontract status quo position; "[t]he effect of rescission is to restore the parties to the position they would have occupied if no contract had ever been made between them."); see also First Nat'l Bank & Trust Co. of Racine v. Notte , 97 Wis. 2d 207, 225-26, 293 N.W.2d 530 (1980) ; Schnuth v. Harrison , 44 Wis. 2d 326, 339, 171 N.W.2d 370 (1969). Kershaw was unable to secure a loan to pay her delinquent taxes to stave off foreclosure; without a significant, clear, positive change in her financial position since then, the court, understandably, was not convinced she was in a position to repay to Kwico the funds it had expended to purchase her properties.
¶10 In her reply brief on appeal, Kershaw asserts, "If Kershaw had financing, she could have paid with loan proceeds." That is exactly the point, "[i]f" she had financing, but she did not. Kershaw states she "proposed repaying the funds Kwico had advanced at the rate of $ 950.00 per month. In addition, Fred and Leah Percey [the former neighbors] offered to return the $ 30,000.00 they had been paid." However, as part of the purchase of the properties, Kwico immediately expended the entire $ 57,000 ($ 27,000 for delinquent taxes plus $ 30,000 for the mortgage from the former neighbors) in purchasing the properties from Kershaw, not $ 950 per month over a period of years. And as the record in this case makes clear, there is significant uncertainty as to whether Kershaw could continue to make such payments to Kwico while keeping up with the property taxes, mortgage from the Perceys, and other expenses.[8]
¶11 Moreover, the circuit court was not convinced that rescission, even if possible, was the most equitable remedy, as the court recognized that Kershaw, although in a distressed position with regard to the pending tax foreclosure, chose to sell the properties to Kwico.[9] While the court found the price Kwico paid her for the properties to be unconscionably low, it found the rest of the contract to be valid and observed that Christl was merely acting as a businessman, and particularly one who in fact was in the business of buying and "flipping" houses.
¶12 After rejecting rescission, the circuit court considered various other options:
Do we reform the contract and just give Ms. Kershaw a judgment of some sort against Mr. Christl to even this off? The other option is for this Court to throw the properties on the market, sell it, and then we'll pay Mr. Christl all of the amount he expended for a reasonable amount of property, for all of his work and stress of managing this property, and everything he has expended, pay it off and remaining amounts go to Ms. Kershaw. At least in this Court's finding, she would walk away with some monies from the sale.
The court sought briefing on various remedies available to it, expressing to the parties, "[I]f you have a specific finding you want me to make or order for me to make, you have to have proof that, in fact, it can be accomplished. Don't give me theories whether she could do or that he could do that or try this."
¶13 Following the briefing, the circuit court made an oral ruling during which it expressed that it was balancing Kershaw's inability to afford the properties and her interest in the equity in them with Christl's "certainly reasonable, appropriate and expected" business interest in buying the properties for the lowest price possible in order to profit from "flipping" them. After articulating various considerations, the court ordered the properties be put up for sale by Kwico, indicating that once the properties sold, the court would determine how the proceeds would be divided. The court made a reasonable decision.
¶14 Our decision in Foursquare Properties Joint Venture I v. Johnny's Loaf & Stein, Ltd. , 116 Wis. 2d 679, 343 N.W.2d 126 (Ct. App. 1983), supports our affirmance. In Foursquare , Johnny's entered into a lease with Foursquare Properties that contained a provision establishing a formula for determining Johnny's share of the real estate taxes for the shopping center where Johnny's was located. Id. at 680. The circuit court upheld the validity of the lease but determined that the tax provision was unconscionable. Id. at 680-81. Rather than dispose of the entire contract, the court modified the unconscionable provision by "recalculat[ing] Johnny's tax obligations" based on a pro rata formula, which resulted in Johnny's owing no taxes, and also ordering that the tax formula be adjusted in a manner that would limit Johnny's future tax obligations. Id. at 681. On appeal, we agreed the tax provision was unconscionable, observed that the circuit court essentially "redraft[ed] the lease," and upheld the court's remedy. Id. at 682-83.
¶15 Similarly, the circuit court here found the contract valid but the price provision unconscionable. As the remedy for the unconscionably low price paid by Kwico for the properties, the court ordered that the properties-now owned by Kwico-be sold so Kershaw ultimately may realize a conscionable return for her earlier sale of the properties to Kwico. As indicated, Kershaw bears the burden of convincing us the court erroneously exercised its discretion with the remedy it chose, not just that she would have preferred a different remedy. See Schmit , 264 Wis. 2d 414, ¶26. She has not met her burden.[10]
Sale of the properties as one
¶16 At the hearing on whether to approve the sale of the properties to a third party for the $ 200,000 offered, Kershaw argued that rather than confirm the pending sale, the court should instead order that the vacant property be subdivided, with individual parcels then sold separately. On appeal, Kershaw claims the court erred in rejecting her proposal. We disagree.
¶17 Again, we reiterate that we will only reverse the circuit court's equitable decision if the court erroneously exercised its discretion. See id. ; Nationstar Mortg. LLC v. Stafsholt , 2018 WI 21, ¶23, 380 Wis. 2d 284, 908 N.W.2d 784. We note that
[e]quitable remedies ... are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties.
White v. Ruditys , 117 Wis. 2d 130, 141-42, 343 N.W.2d 421 (Ct. App. 1983) (footnote omitted; citation omitted). We agree with Christl that the circuit court in this case "engaged in an in-depth consideration of the equities on both sides and struck a reasonable balance."
¶18 Kershaw's suggestion of subdividing the properties for sale came very late in the process of selling the properties, their sale having been ordered by the court six months earlier and the properties having been placed on the market. Additionally, at the May 4, 2017 evidentiary hearing on Christl's motion to approve the pending sale, Kershaw presented little evidence supporting her position that the vacant property could be successfully subdivided at all, much less in a reasonable time frame, or that doing so was likely to result in a significantly greater financial return, as opposed to just more uncertainty. By contrast, Christl presented the testimony of an experienced real estate agent whom the court found to be "credible, believable, and ... certainly knowledgeable." The agent indicated it would cost approximately $ 77,000 to subdivide the vacant lot and prepare the individual parcels for sale, and that the increased overall return due to such subdivision and sales would be approximately $ 35,000. Based upon the evidence presented, the court found that the agent "did conduct the appropriate investigation into how to develop [the properties] and what goes into it."
¶19 The court recognized that subdividing the properties as Kershaw proposed would involve various risks and "much more time [and] much more investment," and accepted the agent's testimony as to the potential increased return on the vacant property if subdivided and sold. The court indicated that if it appeared that subdividing the vacant lot was likely to produce a return of a substantially higher amount, "maybe that would be something that this Court would entertain. But the numbers as presented by [the agent] was certainly not of a significant amount of difference between the sale of the property as a whole versus parceling out, especially in light of the financial investments that's required." The court noted that "[i]t takes work and effort to market these [individual parcels]. Also, to get it into shape. And maybe someone would accept it as is but even then, that market price is completely speculative as to what would come in and how much they would be sold for individually." The court found Kershaw could have attempted to do such subdivision prior to selling the properties to Kwico, but she simply did not have the money to do so. The court rejected Kershaw's suggestion that two years later the court should "essentially manage that type of sale" on her behalf.[11]
¶20 The court found that the properties had been marketed and offered in a reasonable manner and that, considering appraisals and tax assessment values presented to the court, the $ 200,000 offer was "reasonable and appropriate under these circumstances." As the court indicated, Kershaw's subdivide-the-property suggestion was speculative as to how it would be executed successfully and whether or how much additional money such a plan might produce, and it would require a substantial amount of additional time, money and effort to effectuate, with uncertain results. The court's ruling approving the sale of the properties as one was reasonable.[12]
By the Court. -Orders affirmed.
Not recommended for publication in the official reports.

This court granted leave to appeal the orders. See Wis. Stat. Rule 809.50(3) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

In this decision, we will sometimes use "Kershaw" in reference to just Kathryn Kershaw and sometimes use it in reference to both her and The Lord's Highlands, Inc. Likewise, we will sometimes use "Christl" to refer to just Richard Christl and sometimes use it in reference to both him and Kwico Investments, LLC.

Kershaw also contended that selling just the vacant parcel alone would allow her to pay back Kwico's investment while also allowing her to continue her ownership of and residency in the adjacent parcel with the home on it. While she makes a similar point on appeal, because she fails to develop a clear, coherent legal argument on this point, we do not address it. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

Contrary to Wis. Stat. Rule 809.19(1)(e) and (3)(a)2., both parties make various factual assertions without citations to the record and make sweeping statements of law without any legal support. We strongly encourage counsel for the parties to do a more conscientious job in adhering to the rules in the future.

Kershaw also complains "[t]he entire contract should have been held unenforceable" and the deeds rescinded because the sale of the home itself was "unnecessary" and unconscionable. Other than her conclusory say-so, however, she fails to develop an argument that the sale of the home was unconscionable. As a result, we reject this contention on that basis alone. See Clean Wis., Inc. v. PSC , 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments."). That said, we note that the circuit court found that Kershaw chose to sell the properties to Kwico precisely because she was on the verge of tax foreclosure due to her failure to pay property taxes, for which she owed over $ 27,000. Indeed, Kershaw acknowledged to the circuit court that she had a tax foreclosure problem in November 2014 and that she knew she was "going to be kicked out of the property from the foreclosure if [she] didn't solve that problem." The court noted that prior to choosing to sell to Kwico, Kershaw made desperate attempts to secure a loan so she could retain possession of her properties but these efforts were unsuccessful. One of Kershaw's own witnesses, a banker from whom Kershaw had unsuccessfully sought a loan, testified he had never seen a situation where a tax foreclosure had gone so far without eviction of the property owner. The court explained that Kershaw may have had the option at one time of selling off part of the properties in order to retain the parcel on which she resided-an option she now faults the court for not imposing-but that she did not take the necessary steps to do this when she had the opportunity to do so, leaving her in her financial predicament. While we cannot say for certain precisely what would have happened had Kershaw not sold the properties to Christl when she did, Kershaw was, as the circuit court found, "in financial distress and really had several challenges in meeting her expenses and staying in her home." Under the circumstances, there was nothing unconscionable about Kershaw's decision to sell the properties and Kwico's decision to buy them.

The circuit court's determination that the price Kwico paid Kershaw for the properties was unconscionably low is not challenged in this interlocutory appeal.

As the court noted, "Nothing in this record shows that [Kershaw's financial situation] has gotten any better .... She's in the same dire financial straits as she was then. And in [Kershaw's] brief to the Court, [s]he submitted many suggestions or recommendations that had a lot of [']mays['] in it, a lot of contingencies."

Kershaw points to an affidavit by Fred Percey indicating he is "willing to refund the $ 30,000 payment" to Christl "in order to accommodate the rescission of this transaction," and "as an alternative," Percey is "willing to guarantee a loan" to Kershaw "to permit [her] to borrow the funds to accomplish the rescission of this transaction." It is not clear what the "willing[ness] to refund the $ 30,000 payment" really means. Does it mean Percey would be willing to refund Christl's $ 30,000 but only if the $ 60,000 mortgage for the property was reinstated? Does Percey have the financial ability at this time to refund the $ 30,000? Further, his alternative "willing[ness] to guarantee a loan" tells us, and told the circuit court, nothing about whether a financial institution would in fact loan Kershaw the requisite funds even with Percey's "guarantee." All of this highlights the circuit court's point that Kershaw's ability to restore Kwico to the precontract status quo was, at best, speculative and uncertain.

Kershaw rests a fair portion of her argument on her undeveloped assertion that she simply "did not understand what was happening" when she sold the properties to Kwico, even suggesting she may not have been competent at the time she signed the contract. The law, however, "presumes that every adult person is fully competent until satisfactory proof to the contrary is presented," and "[t]he burden of proof is on the person seeking to void the act." Hauer v. Union State Bank , 192 Wis. 2d 576, 589, 532 N.W.2d 456 (Ct. App. 1995). The record indicates Kershaw has never been found incompetent, a fact which the circuit court specifically noted in its ruling and which Kershaw fails to develop an argument challenging.

On appeal, Kershaw loosely mentions the prospect that her "homestead" rights may come into play in this case. We do not address any homestead-rights assertions she makes because they are completely undeveloped. See Clean Wis., Inc. , 282 Wis. 2d 250, ¶180 n.40 ("We will not address undeveloped arguments.").
Kershaw also claims there was an "agreement" that she "could pay off the funds advanced by Kwico" and buy the home back from it. This is a moot point. Even if Christl did make such a promise to Kershaw, it is undisputed that the promise would have related to Kershaw paying Christl by the end of April 2015, and all the evidence indicates she had no ability at that time to pay him back. Furthermore, we are not aware of any evidence indicating she actually attempted to do so.

Additionally, the question as to who would finance the necessary investment to subdivide the property and prepare it for sale, and how, loomed large before the circuit court. At the May 4, 2017 hearing, Christl testified that he did not have the funds needed to subdivide the vacant property. Kershaw also did not have the funds. Noting that Kershaw failed to present a "firm financial commitment," the court observed that "[i]t takes work and effort" to effectuate such an undertaking, and "there would be much costs to do it exactly as Ms. Kershaw suggests or wants."

Christl requests "costs and fees on appeal," but develops no argument in support of this request; therefore, we do not consider it. See Clean Wis., Inc. , 282 Wis. 2d 250, ¶180 n.40.